**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

---

HECTOR D. MENDOZA,

        Plaintiff,

        v.

U.S. CUSTOMS AND BORDER
PROTECTION, DEPARTMENT OF
HOMELAND SECURITY,

        Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action
05-6017 (GEB)

**O P I N I O N**

---

RECEIVED

SEP 1 3 2006

AT 8:30 _____M
WILLIAM T. WALSH
CLERK

**APPEARANCES:**

    HECTOR D. MENDOZA, Plaintiff <u>pro se</u>
    #54250-066
    F.C.I. Yazoo City
    Yazoo City, Mississippi  39194

**GARRETT E. BROWN, Jr., Chief Judge**

    Plaintiff HECTOR D. MENDOZA (hereinafter "Plaintiff")

currently confined at the F.C.I. Yazoo City, Yazoo City,

Mississippi, seeks to bring this 28 U.S.C. § 1331 action[1] <u>in forma</u>

---

[1] The Court has jurisdiction over this matter pursuant to 28
U.S.C. § 1331 because it appears that Plaintiff alleges
deprivation of his constitutional rights. Plaintiff also asserts
jurisdiction under 28 U.S.C. § 1355. Violation of constitutional
rights by federal official, however, gives rise to cause of action
under 28 U.S.C. § 1331 and, therefore, Plaintiff has no need to
rely on implied right of action under 28 U.S.C. § 1355. <u>See United
States v Various Articles of Obscene Merchandise</u>, 514 F. Supp. 463
(S.D.N.Y. 1981).

pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his affidavit of indigence and institutional account statement pursuant to 28 U.S.C. § 1915(a) (1998) and his complaint (hereinafter "Complaint"), together with Plaintiff's Declaration in Support of Complaint for Return of Property (hereinafter "Declaration"), Notice of Complaint for the Return of Property (hereinafter "Notice")[2] and two exhibits: (1) copy of U.S. Customs' Final Administrative Action dated May 27, 2005, see Compl. Ex. 1 (hereinafter "Final Action"), and (2) Plaintiff's response to the Final Action dated June 7, 2005 (registered as received by Customs on June 23, 2005).[3]    See Compl., Ex. 2 (hereinafter "Response").

---

[2]

The nature Plaintiff's Notice is not entirely clear to this Court, since the body of the Notice is paraphrased in terms of a motion, see Notice at 2 ("the undersigned . . . will move before the . . . Court"), but the purpose of the motion is to file Plaintiff's Complaint, see id. ("will move before the . . . Court . . . with a complaint"). Since Plaintiff's submission of his Complaint has been sufficient to bring Plaintiff's action to the attention of the Court, this Court deems the motion contained in Plaintiff's Notice moot.

[3]

In addition, on April 3, 2006, Plaintiff filed with this Court his motion for default judgement (hereinafter "Motion") on the grounds that (1) Plaintiff already "served" his Complaint on Defendant (by the mode unstated in Plaintiff's Motion), and (2) Defendant did not respond to Plaintiff. However, Plaintiff's case cannot be deemed filed until this Court orders so, and thus Defendant's obligation to respond to Plaintiff's Complaint cannot start prior to this Court's screening and filing.    Therefore, Plaintiff's Motion is denied.

Page -2-

## BACKGROUND

Plaintiff asserts that certain property belonging to Plaintiff was seized during Plaintiff's arrest effectuated in the District of New Jersey on May 16, 2000.  See Compl. § 3.  The Complaint further clarifies that the property consisted of cash value in the amount of $24,739, a cellular phone, and a pager.  The Complaint also acknowledges that, following his arrest, Plaintiff was charged with various offenses and eventually convicted, and he is currently serving the resulting federal terms.[4]  See id.

Plaintiff's Declaration asserts that, on June 2, 2005, Plaintiff "received [the Final Action notice] which advised [Plaintiff] that [the Customs would] summarily forfeit[] the [seized] items . . . 'if no claim is filed [by Plaintiff] by June 14, 2005."  Decl. § 2 (quotations and bold font omitted). Plaintiff further asserts that he submitted his Response to the Final Action stating that

> [t]he 5-year statute of limitations . . . has been
> expired . . . See 18 U.S.C. § 981, 19 U.S.C. § 1621

---

[4]

It appears that Plaintiff, also known as Narcisso Liriano-Martinez, as well as Narsiso Martin and Felipe de la Santo Adon, was sentenced to two concurrently running terms of 130 months of imprisonment and five years of supervised release on January 11, 2002.  See USA v. Mendoza, 01-cr-00668-01 (N.J.D. Jan. 11, 2002); USA v. Mendoza, 00-cr-00326-02; Compl. § 3.  It also appears that seizure of the property at issue was related to importation of cocaine from Columbia, see USA v. Mendoza, 00-mj-01045 (N.J.D. Dec. 19, 2003), Decl. § 1, and/or to money laundering activities.  See Compl. Ex. 1 (listing 18 U.S.C. § 981, an anti-money-laundering provision, as grounds for forfeiture).

(requiring that forfeiture proceedings be 'commenced within five years after the time when the alleged offence was discovered'); and [the Customs] 'has not complied with internal directives under 19 U.S.C. §§ 1602-1604, relating to the expedited prosecution of forfeiture cases.

Decl. §§ 3-9.

Plaintiff finally states that he "received the Certified Mail receipt for [his Response] from the prison mailroom on June 13, 2005; and the [Customs] received [the Response] on June 23, 2005." Id. § 6.

Plaintiff brought the instant action "demand[ing] that forfeiture proceedings 'be dismissed as untimely; and the seized items returned to [Plaintiff] forthrightly," id. § 4, and, "in light of [Department of] Customs . . . failure to respond to [P]laintiff's request[,] the Court should hold that [P]laintiff's waiver request satisfies the bond requirement." Id. § 9 (original brackets and citations omitted).

## STANDARD OF REVIEW

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United

States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants. However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions." Id. Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines, 404 U.S. at 520).

## DISCUSSION

### I.   Forfeiture Actions

Since it appears that Plaintiff's claims and requests for relief might be based on misreading of various applicable provisions, this Court believes that it would be helpful to start the discussion with a brief overview of a forfeiture action.

#### A.   The Nature and Types of Forfeiture Actions

Forfeiture is defined as the divestiture without compensation of specific property used in a manner contrary to the sovereign. See Black's Law Dictionary 650 (6th ed. 1990). Federal statutes currently authorize the government to pursue two types of forfeitures: criminal and civil.[5] In case of a civil forfeiture, a judgment of forfeiture results in a final adjudication of the rights of all the claimants to the property.

While there are currently over 100 federal statutes that provide for civil forfeiture, see Lawrence A. Kasten, Extending

---

[5]

Although criminal and civil forfeitures are both utilized by the government in its law enforcement efforts, the nature of the two actions is entirely different. Criminal forfeiture is an in personam action against a criminal defendant resulting in the loss of some right or property as a penalty for some illegal act. By its nature, criminal forfeiture cannot operate against an innocent owner. Rather, it can only be imposed on an individual who has been convicted of a crime. Civil forfeiture, on the other hand, is separate and apart from any criminal proceeding. It is a civil in rem action brought directly against the property sought to be forfeited. Civil forfeiture targets the "guilty property" without regard for the culpability of its owner(s).

Constitutional Protection to Civil Forfeitures that Exceed Rough
Remedial Compensation, 60 Geo. Wash. L. Rev. 194 (1991), the most
frequently utilized civil forfeiture statutes are 21 U.S.C. § 881
(providing for forfeiture of all property traceable to illegal drug
activity) and 18 U.S.C. § 981 (providing for forfeiture of, among
other things, all proceeds from money laundering activities and
various forms of fraud).

Although the term "forfeiture" invokes images of controlled
substances and weapons being confiscated by government agents,
forfeiture is not limited solely to contraband and includes a wide
variety of property, from real estate to cash.  See, e.g., United
States v. United States Currency in Amount of $ 145,139.00, 18 F.3d
73 (2d Cir.), cert. denied sub nom. Etim v. United States, 115 S.
Ct. 72 (1994) (involving U.S. currency and travelers checks);
United States v. 1988 Chevrolet Silverado, 16 F.3d 660 (5th Cir.
1994) (involving an automobile); United States v. $ 20,193.39
United States Currency, 16 F.3d 344 (9th Cir. 1994) (involving U.S.
currency and jewelry); United States v. 900 Rio Vista Blvd., 803
F.2d 625 (11th Cir. 1986) (involving residence and real property);
United States v. $ 5,644,540, 799 F.2d 1357 (9th Cir. 1986)
(involving U.S. currency, gold coins and platinum ingots); One Blue
1977 AMC Jeep v. United States, 783 F.2d 759 (8th Cir. 1986)
(involving an automobile); United States v. 1966 Beechcraft
Aircraft, 777 F.2d 947 (4th Cir. 1985) (involving an airplane).

While the forfeiture statutes explicitly permit the forfeiture of assets actually used in the commission of prohibited activities, see, e.g., 21 U.S.C. § 881(a)(3),(4),(7),(11)(authorizing forfeiture of containers, vehicles, real property and firearms), courts have held that property which merely facilitates the transaction is also subject to forfeiture under the "facilitation theory."[6] See, e.g., United States v. Schifferli, 895 F.2d 987 (4th Cir. 1990); United States v. Rivera, 884 F.2d 544 (11th Cir. 1989); United States v. Contents of Account Nos. 208-06070 & 208-06068-1-2, 847 F. Supp. 329 (S.D.N.Y. 1994); United States v. One 1987 Mercedes Benz 300E, 820 F. Supp. 248 (E.D. Va. 1993); United States v. Certain Accounts, 795 F. Supp. 391 (S.D. Fla. 1992); United States v. All Monies in Account No. 90-3617-3, 754 F. Supp. 1467 (D. Haw. 1991).

## B.   Process of Civil Forfeiture

There are no "special" procedural rules that govern civil forfeiture actions, except for 19 U.S.C. §§ 1001-1654 (1994) (establishing civil procedures for the forfeiture of items brought into the United States in violation of the Customs laws).  Civil

---

[6]
    Courts that have adopted the facilitation theory reasoning that "[t]he broad language and legislative history of 18 U.S.C. § 981 and 21 U.S.C. § 881 makes it clear that any property involved in illegal activity in a way which facilitates that activity is forfeitable." All Monies, 754 F. Supp. at 1473.

forfeiture statutes utilize rules of more general application, and most civil forfeiture statutes, including 18 U.S.C. § 981, have adopted the forfeiture procedures of the Customs law of the Tariff Act of 1930.  See 19 U.S.C. §§ 1602-1618 (1994); see also 21 C.F.R. § 1316.71-81 (1994); cf. 18 U.S.C. § 981(d).

A civil forfeiture starts with the government's seizure of the asset.[7]  And, since the Due Process Clause of the Fifth Amendment provides that no person shall be deprived of property without due process of law, "individuals must receive notice and an opportunity to be heard before the Government deprives them of property." United States v. James Daniel Good Real Property, 114 S. Ct. 492, 498 (1993).  Thus, once the property has been seized, all potential claimants, that is, any party who appears to have an interest in the seized property, must be notified of the intended forfeiture. If the property subject to forfeiture is a conveyance, a monetary instrument, or property with a value of less than $ 500,000, the government must issue two forms of notice: (1) publication for three successive weeks; and (2) written notice of the seizure and applicable forfeiture procedure directly to all known potential

---

[7]
    There are three basic methods of seizure: (1) property can be seized according to the Supplemental Rules for Certain Admiralty and Maritime Claims; (2) seizures can be achieved through an ordinary criminal warrant issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, and (3) property can be seized without a warrant if the seizure is made incidental to a lawful arrest or search, see 18 U.S.C. § 981(b)(2)(A).

claimants.  See 19 U.S.C. § 1607(a).

## C.   Administrative and Judicial Forfeiture

There are two types of civil forfeiture proceedings: administrative and judicial.  An administrative forfeiture is a summary proceeding that is conducted by the seizing agency.  A judicial forfeiture, on the other hand, is conducted by a court. The type of proceeding is determined by statute and also by the selection of the claimant.

An administrative (or summary) proceeding may be employed to forfeit a conveyance, a monetary instrument, or property worth less than $ 500,000.  See 19 U.S.C. § 1607(a).  The government must comply with the prerequisites of 19 U.S.C. § 1607 concerning notice in order to effectuate an administrative forfeiture.[8]  The usual *last* steps in the administrative forfeiture include a written "Final Administrative Action" notice forwarded to the claimant,

---

[8]

Unless informed otherwise, a claimant is usually *first* provided with a letter notifying him of the forfeiture action and outlining the procedures for contesting the forfeiture ("Notice of Seizure and Information for Claimants"); the letter often includes an Election of Proceeding Form and a Hold Harmless Agreement.  The claimant then may provide the Customs with a petition for relief from forfeiture, along with supporting documentation.  If the supporting documentation is incomplete, the Customs informs the claimant by letter that the petition was incomplete and that the claimant has a certain period (usually fifteen days) to provide the necessary documentation.  See, e.g., Musa v. United States, 2002 U.S. Dist. LEXIS 20585, at *2 (E.D.N.Y. Oct. 8, 2002); accord United States v. Robinson, 434 F.3d 357 (5th Cir. 2005).

plus three publications of the notice; and the claimant then has twenty days from the first publication to file a claim for judicial proceedings *and* to post a bond in the amount of $ 5,000 or 10 percent of the value of the claimed property, whichever is less, but not less than $ 250.  See 19 U.S.C. § 1608.  If the claimant fails to timely file a claim *or* to post the bond, the property may summarily be declared forfeited by default, see id. § 1609(a); see also United States v. One 1986 Chevrolet Van, 927 F.2d 39 (1st Cir. 1991); Floyd v. United States, 860 F.2d 999 (10th Cir. 1988), and "[a] declaration of forfeiture [has] the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court."[9]   Id.   § 1609(b).   If, however,

---

[9]
   Civil Assets Forfeiture Act of 2000, codified at Title 18 U.S.C. § 983, provides the exclusive remedy for challenging a civil forfeiture, and a party seeking to challenge an administrative forfeiture is limited to doing so under Section 983(e), which provides that:

>    (1) Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if --
>    (A) the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and
>    (B) the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

Id. § 983(e)(1); § 983(e)(3) ("A motion under paragraph may be filed not later than 5 years after the date of final publication of notice of seizure of the property").  Notably, where a forfeiture is set aside due to inadequate notice, the government may commence a new forfeiture proceeding within a specified period of time.  See

the claimant timely files a claim *and* posts the requisite bond, the government must pursue a judicial forfeiture. See 19 U.S.C. §§ 1604, 1608, 1610.[10]

The government must initiate these forfeiture proceedings

---

18 U.S.C. § 983(e)(2), providing that,

> (A) Notwithstanding the expiration of any applicable statute of limitations, if the court grants a motion under paragraph (1), the court shall set aside the declaration of forfeiture as to the interest of the moving party without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party.
> (B) Any proceeding described in subparagraph (A) shall be commenced- (i) if nonjudicial, within 60 days of the entry of the order granting the motion; or (ii) if judicial, within 6 months of the entry of the order granting the motion.

[10]

A judicial forfeiture is initiated with the filing of a sworn complaint by the government in the federal district court for the district in which the property was seized. The government need only show probable cause to establish a prima facie case for forfeiture. See 19 U.S.C. § 1615; United States v. Banco Cafetero Panama, 797 F.2d 1154, 1160 (2d Cir. 1986). Probable cause in this context means a reasonable ground for belief that goes beyond mere suspicion, but need not amount to prima facie proof. See United States v. One 1987 Mercedes Benz 300E, 820 F. Supp. 248, 251 (E.D. Va. 1993). "In sum, the probable cause standard requires courts to make a practical, common sense decision whether, given all the circumstances, there is a fair probability that the property to be forfeited was involved in or the subject of [an illegal] transaction." Id. at 251. Probable cause may be demonstrated by hearsay, circumstantial evidence or direct evidence. Once probable cause has been established, the burden of proof shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture. See 19 U.S.C. § 1615. The burden of proof in a civil forfeiture proceeding lies with the claimant. See id. If the claimant fails to meet this burden, the government's probable cause showing suffices to support a judgment of forfeiture. See One 1987 Mercedes Benz 300E, 820 F. Supp. at 251.

within five years after the government learns of the alleged offense.  See 19 U.S.C. § 1621.  Moreover, since administrative forfeitures are "separate proceedings" from judicial forfeitures, United States v. $ 184,505.51 in U.S. Currency, 72 F.3d 1160, 1164 (3d Cir. 1995), these actions should be initiated within the five-year period.  However, the statute of limitations may be equitably tolled,[11] e.g., the process of administrative forfeiture may toll the period of limitations with respect to following judicial forfeiture.  See United States v. Ninety-Three Firearms, 330 F.3d 414 (6th Cir. 2003) (discussing the tolling ensuing from administrative proceedings); Tavera v. United States, 1997 U.S. App. LEXIS 2699 (2d Cir. N.Y. Feb. 12, 1997) (discussing re-initiation of administrative forfeiture after administrative withdrawal).

Once the government seizes the property, interested parties have three means of recovery: release, remission/mitigation, and judicial process.[12]  A claimant may seek recovery through the courts

---

[11]

See Longenette v. Krusing, 322 F.3d 758 (3d Cir. 2003), and United States v. Giovanelli, 998 F.2d 116 (2d Cir. N.Y. 1993), for discussion of equitable tolling.

[12]

Which recovery method may be employed depends upon the stage of the forfeiture, the type of forfeiture proceeding, and the claimant.  Release, the most expeditious means of recovery available to a claimant, involves the claimant's buying the seized property from the government.  However, administrative release is subject to the discretion of the government and, usually, possible only as long as the government retains custody of the property. Remission and mitigation are administrative remedies for

by defeating the government's forfeiture case, i.e., recover the property either by rebutting the government's evidence, asserting affirmative defenses or setting forth constitutional defenses. See United States v. 92 Buena Vista Ave., 507 U.S. 111 (1993). For instance, a claimant may assert a constitutional violation of his Fifth Amendment due process rights. See id.; United States v. $ 8,850 in United States Currency, 461 U.S. 555, 557-58 (1983).

## D. Judicial Review of Administrative Forfeiture

District court review of a final administrative forfeiture is limited. District courts lack jurisdiction to review the merits of such a forfeiture. See United States v. Schinnell, 80 F.3d 1064, 1069 (5th Cir. 1996) ("Once the administrative forfeiture was completed, the district court lacked jurisdiction to review the forfeiture except for failure to comply with procedural

---

recovering property that has been legally forfeited pursuant to either an administrative or a judicial proceeding. See 19 U.S.C. §§ 1613, 1618. Remission may only be granted if the claimant establishes that (1) he had "a valid good faith interest in the seized property," (2) he had no knowledge of the property's involvement in any violation of the law or of the property user's criminal record, and (3) he had taken all reasonable steps to prevent the illegal use of the property. 28 C.F.R. § 9.5(b). Mitigation may be granted where the minimum standards for remission are not met but "there are present other extenuating circumstances indicating that some relief should be granted to avoid extreme hardship" or where the minimum standards have been satisfied but "the overall circumstances are such that, in the opinion of the determining official, complete relief is not warranted." 28 C.F.R. § 9.5(c). The granting of a remission or mitigation is entirely within the discretion of the government agency and is not subject to judicial review.

requirements or to comport with due process"). However, once an administrative forfeiture is executed, the federal courts have jurisdiction to review whether an administrative forfeiture satisfied statutory and due process requirements, and a claimant can collaterally attack an inadequately noticed administrative forfeiture by suing for equitable relief, i.e., for the return of the seized property under 28 U.S.C. § 1331, via the waiver of sovereign immunity found in the Administrative Procedure Act at 5 U.S.C. § 702. See Foehl v. United States, 238 F.3d 474, 487-88 (3d Cir. 2001)

Due process standards encompass the timeliness of the administrative forfeiture. See, e.g., Robinson v. United States, 734 F.2d 735, 738 (11th Cir. 1984) ("An unreasonably long retention without instituting a forfeiture proceeding can constitute a denial of due process") (citing § 8,850, 461 U.S. 555, and § 23,407.69, 715 F.2d 162). However, while an undue delay in initiation of administrative proceeding may invoke the claimant's due process right, "there is no obvious bright line dictating when a post-seizure hearing must occur." § 8,850, 461 U.S. at 562. Similarly, there is no obvious bright line as to when the government must first notify a party of its intent to forfeit seized funds. Hence, a substantial delay does not automatically require a conclusion that due process was violated. Rather, the length of the delay is considered in relation to the other factors,

and "the government must explain and justify substantial delays in seeking forfeiture of seized property." § 23,407.69, 715 F.2d at 166. For instance, a delay in first notice may be deemed reasonable in light of the pendency of the criminal prosecution, large-scale investigation of a drug trafficking operation or the need to coordinate operations between various government officers, see Robinson, 434 F.3d at 354, since the "[g]overnment must be allowed some time to decide whether to institute forfeiture proceedings." § 8,850, 461 U.S. at 565; see also Mercado v. U.S. Customs Serv., 873 F.2d 641, 646 (2d Cir. 1989) (stressing the government's need to (1) investigate and decide whether and how to proceed with forfeiture, and (2) explore "the possibility of a grand jury investigation and indictment"). Finally, the claimant has to show that the government's delay caused him prejudice. The sole fact of deprivation of a substantial sum of money for a long period of time is insufficient, without more, to show prejudice since the Supreme Court made clear that the "primary inquiry [of the prejudice analysis] is whether the delay has hampered the claimant in presenting a defense on the merits." § 8,850, 461 U.S. at 569.

In sum, the due process analysis requires a flexible approach, and the purpose of the above-listed factors is "to assess whether the basic due process requirement of fairness has been satisfied in a particular case." § 8,850, 461 U.S. at 564-65; see also United

States v. Assorted Computer Equip., 2004 U.S. Dist. LEXIS 6334
(W.D. Tenn. Jan. 9, 2004) (where the government waited four years
after the equipment was seized to file the forfeiture complaint,
the claimant's due process rights had not been violated because it
was reasonable for the government to wait until after the criminal
proceedings were resolved, and the claimant had failed to show that
he was prejudiced by the delay).

Finally, due process notice requirement does not require
*actual receipt* of notice by the claimant. See <u>Dusenbery v. United
States</u>, 534 U.S. 161, 170-71 (2002).  Nor does it require the
government to make "heroic efforts" at notice. <u>Id.</u> at 170. "[D]ue
process [merely] requires that notice to the property owner be
'reasonably calculated, under all the circumstances, to apprise
interested parties of the pendency of the action and afford them an
opportunity to present their objections.'" <u>Foehl</u>, 238 F.3d at 478
(quoting <u>Mullane</u>, 339 U.S. at 314); <u>see also</u> <u>Robinson</u>, 434 F.3d at
367.  In sum, "[b]ecause due process is an infinitely flexible
concept, there is no infallible test for determining the adequacy
of notice in any particular situation.   The touchstone is
reasonableness:  the government must afford notice sensibly
calculated to inform the interested party of the contemplated
forfeiture and to offer him a fair chance to present his claim of
entitlement.   Whether the notice actually given is or is not
reasonable invariably depends on the circumstances of the

individual case." <u>Gonzalez-Gonzalez v. United States</u>, 257 F.3d 31,

2001 U.S. App. LEXIS 16508 (1st Cir. 2001) (citations omitted).

### E.    Effect of Errors in Forfeiture Actions

If the reviewing district court determines that the procedure

of administrative forfeiture at issue was deficient, the forfeiture

may be deemed either voidable or void.    As the Third Circuit

explained,

> All of the appellate courts that have addressed similar
> issues were faced with defective notices of forfeiture.
> Four appellate courts -- the Courts of Appeals for the
> Second, Fifth, Ninth, and Tenth Circuits -- have held
> that a forfeiture conducted without adequate notice is
> void. [<u>See</u>] <u>Alli-Balogun v. United States</u>, 281 F.3d 362,
> 370-71 (2d Cir. 2002); <u>Kadonsky v. United States</u>, 216
> F.3d 499, 506-07 (5th Cir. 2000); <u>United States v.
> Marolf</u>, 173 F.3d 1213, 1218-20 (9th Cir. 1999); <u>United
> States v. Clymore</u>, 164 F.3d 569, 574 (10th Cir. 1999).
> As the Fifth Circuit explained in <u>Kadonsky</u>, "[t]he remedy
> for constitutionally insufficient notice in forfeiture
> proceedings  is  to  void  and  vacate  the  original
> proceeding, and [the statute of] limitations may bar
> consideration of the government's forfeiture claim on the
> merits unless the government provides a rationale to
> equitably toll or otherwise not apply the statute." 216
> F.3d at 506-07. One appellate court -- the Court of
> Appeals  for  the  Sixth  Circuit  --  has  interpreted
> insufficient notice as making forfeiture proceedings
> voidable, not void.    [<u>See</u>] <u>United States v. Dusenbery</u>,
> 201 F.3d 763, 768 (6th Cir. 2000), <u>aff'd on other
> grounds</u>, 534 U.S. 161, 151 L. Ed. 2d 597, 122 S. Ct. 694
> (2002).  In a 2-1 decision, the Sixth Circuit declared
> that "inadequate notices should be treated as voidable,
> not void, and that the proper remedy is simply to restore
> the right . . . to judicially contest the forfeiture . .
> . . Thus, the Government is not required to institute
> 'new' forfeiture proceedings and the applicable statute
> of limitations, § 1621, therefore has no bearing." <u>Id.</u>
> [The Third Circuit has] adopted the majority view when
> there has been inadequate notice. In <u>Gold Kist, Inc. v.

Laurinburg Oil Co., 756 F.2d 14, 19 (3d Cir. 1985), [the Third Circuit] declared that "[a] default judgment entered when there has been no proper service of complaint is, a fortiori, void, and should be set aside." [The Third Circuit] applied Gold Kist to civil forfeitures in United States v. One Toshiba Color Television, 213 F.3d 147, 156 (3d Cir. 2000) (en banc), holding that a prior forfeiture judgment issued without proper notice to a potential claimant is void. Because the administrative forfeiture lacked legal foundation, the judgment was incurable. Id.; see also Kadonsky, 216 F.3d at 506 ("[C]onstitutionally ineffective notice renders forfeiture orders void because the court lacked jurisdiction to enter them"). Thus, [the Third Circuit] held that where notice is improper, the administrative forfeiture is, a fortiori, void, and should be set aside. [However, where] the government provided proper notice to [the claimant,] the proceedings [are] valid from their inception. This distinction makes the administrative forfeiture proceeding . . . voidable, rather than void [if the later process is erroneous]. Once notice was properly given to [the claimant], the [agency] validly could proceed with the administrative proceeding. Furthermore, the District Court subsequently had jurisdiction to enter the judgment of forfeiture [and] the [C]ourt's judgment is voidable, not void. If the administrative forfeiture is voidable, the proper remedy is to vacate the forfeiture and restore the prior situation . . . and the matter would be referred to the local United States attorney for judicial forfeiture.

Longenette v. Krusing, 322 F.3d 758, 765-67 (3d Cir. 2003) (finding that an improper decision with respect to the claimant's in forma pauperis application submitted in lieu of bond rendered the administrative forfeiture voidable rather then void and triggered the ensuing judicial forfeiture).

**F.    Bonds and In Forma Pauperis Status**

Finally, as it has been mentioned, in order to contest an administrative forfeiture under 19 U.S.C. § 1607, an interested

party must file a claim together with a cost bond within 20 days of the date of the first publication of the intent to forfeit. See 19 U.S.C. § 1608. The requirement for a cost bond is not inflexible, and it may be waived upon proof that a party is unable to afford the cost of the bond. See 19 C.F.R. § 162.47(e). Thus, the timely filing of a claim, accompanied either proof of in forma pauperis (hereinafter "IFP") status, is usually sufficient to secure a waiver and obliges the agency to refer the matter to the United States Attorney for the commencement of judicial forfeiture proceedings.[13] See 19 U.S.C. § 1608. While the requirement to post a bond is frequently waived, such waiver is not automatic and, if no satisfactory IFP filing is made with the prescribed period, the agency may declare the property forfeited.[14] See 19 U.S.C. § 1609(a). If the forfeiture is executed on the basis of insufficient IFP filing and then contested, the district court

---

[13]

Notably, a prisoner timely contests the administrative forfeiture if he submits his claim and his IFP application for mailing to his prison authorities: because neither 19 U.S.C. §§ 1608 or 1609, nor the regulations required "actual receipt," the prison mailbox rule applies. See Longenette v. Krusing, 322 F.3d 758.

[14]

Usually, if the agency finds the claimant's IFP application unsatisfactory, the agency responds with a letter reading, in relevant parts, as follows: "Your claim for the above-referenced seized property is being returned to you because the deciding authority found that the Affidavit of Indigency you submitted in lieu of a cost bond is not adequately supported. As a result, your petition to proceed In Forma Pauperis is denied." Tourus Records, Inc. v. DEA, 259 F.3d 731, 788 (D.C. App. 2001).

should review the agency's denial of the petition to proceed IFP
under the familiar standard of the Administrative Procedure Act,
and overturn the decision only if the court finds the denial to be
arbitrary or capricious.[15]  See 5 U.S.C. § 706(2)(A).

## II.  Forfeiture Issues Presented by the Case at Bar

Having outlined the process of forfeiture, this Court now
turns to the allegations set forth in Plaintiff's Complaint and
accompanying documents.

Since Plaintiff's Complaint is silent as to whether the Final
Action was the first and only communication received by Plaintiff
from Customs, this Court is left to guess the time when the
administrative forfeiture was initiated.[16]  Similarly, this Court
is left in the dark as to whether the property at issue was in fact

---

[15]

A court must set aside agency action it finds to be arbitrary,
capricious, an abuse of discretion, or otherwise not in accordance
with law.  See 5 U.S.C. § 706(2)(A).  At a minimum, that standard
requires the agency to examine the relevant data and articulate a
satisfactory explanation for its action including a rational
connection between the facts found and the choice made.

[16]

The Final Action indicates that the Final Action was issued on
May 27, 2005, while the date of seizure was May 16, 2000, that is,
five years and eleven days prior.  See Compl., Ex. 1 at 1.  If the
Final Action was the first, rather than one of the last steps of
the administrative forfeiture, the forfeiture could be time barred,
absent grounds for equitable tolling, and therefore, void.
Conversely, if the administrative forfeiture was duly initiated
prior to May 16, 2005, the forfeiture could be valid (or, in case
of procedural errors other than agency's failure to attempt, in
good faith, reasonable notice to Plaintiff, voidable).  See
Longenette v. Krusing, 322 F.3d at 765-67.

administratively forfeited (and, thus, whether Plaintiff suffered any injury and whether this Court has jurisdiction to review the agency's actions), since Plaintiff's Complaint is equally silent as to whether an actual declaration of forfeiture took place.

Moreover, since the stamp on Plaintiff's Exibit 2 indicates that Plaintiff's Response was duly received by Customs, it is likely that Plaintiff's administrative forfeiture indeed was terminated, either in favor of Plaintiff or by initiation of a judicial forfeiture against Plaintiff. Plaintiff's Complaint is, however, silent as to whether (a) any administrative order in favor of Plaintiff was entered (thus, enabling Plaintiff to demand return of the property at issue), or (b) any judicial forfeiture proceedings were initiated. The Complaint is equally silent as to any undue restrains on Plaintiff's ability to contest the government's judicial forfeiture case by raising his statute of limitations affirmative defense or his due process constitutional defense. Finally, Plaintiff's submissions do not indicate that his request to proceed in forma pauperis was denied by the Customs. In sum, it is not clear from the face of Plaintiff's submission whether Plaintiff actually suffered any injury besides lack of updates from Customs.[17]

_____

[17]

Since one has no constitutional rights to receive updates from the agency (except for the notices required by procedural due process), such lack of information does not entitle Plaintiff to have "the seized items returned to [Plaintiff] forthrightly," Decl. § 4, under the legal regime discussed supra. Similarly, there is

Recognizing all these shortcomings of Plaintiff's Complaint, this Court nonetheless is reluctant to dismiss the Complaint <u>sua sponte.</u> The type of review conducted at this juncture concentrates on the propriety of <u>sua sponte</u> dismissal, that is, a dismissal on the court's own initiative, without affording Plaintiff further opportunity to be heard.  If Defendant files a motion to dismiss for failure to state a claim, <u>see</u> Fed. R. Civ. P. 12(b)(6), Plaintiff, as a practical matter, has notice of the motion and an opportunity to amend the Complaint as of right.  <u>See</u> Fed. R. Civ. P. 15(a).  But if the Court dismisses this action <u>sua sponte</u>, the dismissal deprives Plaintiff of these protections.     Thus, recognizing "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'" <u>Milhouse</u>, 652 F.2d at 373 (quoting <u>Haines</u>, 404 U.S. at 520), this Court liberally construes Plaintiff's Complaint, <u>see Haines</u>, 404 U.S. 519; <u>Day</u>, 969 F.2d at 42, as asserting a violation of Plaintiff's due process rights by excessive delays in Plaintiff's administrative forfeiture and allows Plaintiff's claims to proceed to the next stage.

---

no legal basis that this Court is aware of for granting Plaintiff IFP status for the purposes of Plaintiff's potential judicial forfeiture proceedings on the basis of lack of communications between Plaintiff and the Customs.   This Court expressly stresses that the Court's decision to grant Plaintiff IFP status for the purposes of the instant action has no relevance to waiver of bond in any other proceedings.

## Conclusion

For the reasons stated above, this Court proceeds Plaintiff's Complaint past the sua sponte stage. See 28 U.S.C.§ 1915 (e)(2)(B).

An appropriate order accompanies this Opinion.


s/Garrett E. Brown, Jr.
**GARRETT E. BROWN**
**Chief Judge**
**United States District Court**

Date: September 12, 2006